The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good morning. We'll first call 5-24-0200, 5-24-0202, Ryan J. Mahoney individually, and on behalf of Cates Mahoney, LLC versus David Cates, Cates Law Firm, LLC. Counsel for the appellant, please state your name for the record. Good morning, Your Honors. This is Thomas Horscroft for Appellant Ryan Mahoney. Counsel, attorneys for the appellate, if you please state your name for the record. Yes, Candace Kusmer for Appellee Cross Appellant. Very well. Parties may proceed. Good morning, Your Honors, and may it please the court. My name is Tom Horscroft, and I represent Plaintiff Ryan Mahoney. This consolidated appeal involves the interpretation and applicability of an arbitration provision contained in the 2013 operating agreement for the now-dissolved law firm, Cates Mahoney, LLC. Attorneys Ryan Mahoney and defendant David Cates were the members of the LLC. In August of 2022, Mahoney and Cates executed a separation agreement after Cates unilaterally dissolved Cates Mahoney on May 27, 2022, and the separation agreement purported to allocate Cates Mahoney's cases among Cates Mahoney and the Cates Mahoney firm. The separation agreement also contained a representation by Cates that one of Cates Mahoney's cases, Blue Cross, had not resolved prior to May 27, 2022. Mahoney alleges that throughout the execution of the separation agreement, Cates fraudulently concealed from Mahoney nearly $10 million in legal fees and cost reimbursements generated by the undisclosed sums were paid to Cates and his new firm. All of Mahoney's claims arise out of and relate to the separation agreement, which does not contain an arbitration clause. Unlike the separation agreement, the Cates Mahoney operating agreement contains an arbitration provision, and its plain language requires that any arbitrable controversy, quote, shall be determined solely in accordance with the terms of this agreement, that's the operating agreement, and Illinois law applicable to limited liability companies, end quote. Accordingly, the arbitration provision cannot apply unless a controversy can be fully determined solely in accordance with the terms of the operating agreement and Illinois law applicable to LLCs, and the arbitration provision does not apply to claims that arise out of and relate to agreements other than the operating agreement. Now here, none of Mahoney's claims can be fully determined solely in accordance with the terms of the operating agreement and Illinois law governing LLCs, and that's because of all of Mahoney's claims arise from and relate to the 2022 separation agreement, and all of his claims require the making of determinations in accordance with the terms of that agreement. Now Mahoney's complaint contains five counts all arising out of the separation agreement. Count one is a derivative claim on behalf of Cates Mahoney LLC for breach of fiduciary duty, and that's based on Cates fraudulent concealment of the Blue Cross and Messiah settlements throughout the negotiation execution of the separation agreement, as well as Cates misappropriation of the entirety of the fee awards for these cases. Count two is an individual claim for breach of fiduciary duty. It's again based on Cates fraudulent concealments throughout the negotiation and execution of the separation agreement. Count three is an individual claim for constructive fraud. It's again based on Cates fraudulent concealments relating to the separation agreement. Count four is a claim for actual fraud based on Cates misrepresentations regarding the status of Blue Cross, and it includes Cates affirmative representation in the separation agreement that Blue Cross have not resolved prior to May 27th, 2022. Finally, count five is a claim for breach of the separation agreement, and that count alleges that Blue Cross is an asset of Cates Mahoney under the terms of the separation agreement because Blue Cross was resolved prior to May 27th of 2022, and that Cates breached the separation agreement by failing to share the Blue Cross fee with Mahoney. Now, despite extensive briefing and argument, both in this court and below, Cates has not explained and cannot explain how Mahoney's claims could be determined solely in accordance with the terms of the operating agreement and Illinois law governing LLCs, and therefore those claims are not arbitrable under the operating agreement. Despite all this, Cates moved below to compel arbitration based solely on the operating agreement's arbitration provision. The circuit court declined to compel arbitration of Mahoney's claims of fraud and fraudulent inducement in counts two through four, reasoning that no provisions of the operating agreement or separation agreement adjust such conduct, and the court also declined to compel arbitration of some of Mahoney's derivative claims on behalf of Cates Mahoney based on the same fraud and fraudulent inducement. The circuit court compelled arbitration of Mahoney's claims that Cates had breached the separation agreement and certain of Mahoney's derivative claims on behalf of Cates Mahoney, and the circuit court reasoned that the arbitration provision and the operating agreement covered the separation agreement and that the operating agreement spoke directly to Mahoney's allegations that Cates had breached his producery duties by tampering with Cates Mahoney's records and by misappropriating the fee awards in Blue Cross and Mississippi. This court should affirm the circuit court's decision to the extent it declined to compel arbitration and reverse the decision to the extent it compelled arbitration. An outcome is warranted for three primary reasons. First, the language of the operating agreement's arbitration provision clearly indicates that it only applies to a controversy to be fully determined solely in accordance with the terms of the operating agreement and Illinois law governing LLCs. Second, nothing in the separation agreement expands the scope or applicability of the arbitration provision, and although Cates and Mahoney, who are both attorneys, easily could have incorporated the arbitration provision in the separation agreement or included a separate arbitration agreement in that in the separation agreement, they did not do either. Third, all of Mahoney's claims require that at least some determinations be made in accordance with the terms of the separation agreement. So, none of Mahoney's claims are arbitral under the terms, the plain language of the operating agreement's arbitration clause. Now, alternatively, the arbitration clause only applies to controversies. That's the language that's used in the agreement. The plain meaning of a controversy is a disputed claim. Cates, to date, has not sufficiently established which claims of Mahoney's he disputes. So, first, the arbitration provision only applies to controversies that can be fully determined solely in accordance with the terms of the operating agreement and Illinois law governing LLCs. Two sources of authority warrant this conclusion. First, we have the basic principles that govern contract interpretation, and they include the following, that contracts must be as a whole, contract provisions may not be read in isolation, all provisions of a contract must be given effect, and contracts must be interpreted to avoid absurd results. Counselor, excuse me, if I may, with regards to what is the best evidence that the separation agreement and the operating agreement are, in fact, two distinct contracts? In my mind, I think the most compelling point to me is that there are portions of the separation agreement and portions of the operating agreement that are materially identical. You have a choice of law clause that appears in both the operating agreement and in the separation agreement. If these were one contract, one unified contract, you would have no need to have a choice of law clause in both provisions. So, to me, that's compelling evidence that these are not the same contract. And it would have been very easy for the parties to do a number of things to make it clear that these should be one contract. They very easily could have said in the separation agreement, we are incorporating by reference the operating agreement. And they're both attorneys, they're they know what the words incorporate mean. I'm sure they use them on an almost daily basis when they're drafting complaints. And they left those words out of the separation agreement. Now, I think that's compelling evidence that they did not intend for these two agreements to be treated as one. Additionally, with regards to the fact that Mr. Cates filed a termination with the Secretary of State, what, if any, effect does that have on the arguments that you're presenting to this court or with regards to the operating agreement itself? I mean, I think our position would be that that termination that he filed was improperly filed, and that it was not valid, and that the company itself had not actually been wound up at the time it was filed. In terms of its effect on the arguments we're making, you know, we haven't taken the position that the operating agreement was terminated by Cates doing that. I mean, that's that might be the effect, but again, we don't, our position is that that termination itself is invalid. So I don't want to suggest to the court that we think that that was, you know, an effective termination of the entity. You know, I think that would be inconsistent with our position on the, you know, on that termination that Mr. Cates filed. Thank you. You're welcome. So here the arbitration provision, you know, unquestionably requires that the arbitrator determine any arbitrable controversy solely in accordance with the terms of the operating agreement and Illinois law governing LLCs. And this duty of the arbitrator necessarily informs how we interpret the other provisions of the arbitration agreement, including the clause that Cates relies on, the case that states... Counsel, I have a question. Who prepared the separation agreement? It was prepared jointly by both parties. It was a negotiated agreement, you know, drafts were exchanged back and forth. Who initiated the idea that a separation agreement was needed? I'm not sure about that. I don't think there's anything in the record that speaks to that. You know, I know it was Cates, Cates initiated the dissolution. I don't know from there, you know, how the parties came to decide that a separation agreement was needed. I know there were meetings after the dissolution, and my assumption is that at those meetings, the parties reached an understanding that they would enter into a separation agreement. Well, your claim is, if I understand it, that Mahoney was not aware of these two big fee payments when the separation agreement was created. Is that correct? That's correct. He was not aware of many facts about those two cases, but they had been mediated that there were settlements in place, and the amount of the fee and the expense awards that were generated by those settlements. There's no question that, on this record, I guess that Cates was aware of that. He must have been, yes. He was involved very heavily in all of the negotiations, I believe, of those settlements. Okay, go ahead. Thank you. So, the duty of the arbitrator necessarily informs how we interpret the provisions of the agreement, including the clause that Cates is relying on, the clause that states that any controversy arising or relating to this agreement shall be submitted to arbitration. And the second source that supports Mahoney's interpretation of the arbitration clause is the Illinois Supreme Court's 2001 decision in the Salzitz case. And Salzitz teaches us two lessons. And first is that an arbitration agreement will not be extended by construction or implication. And second, even an extremely broad arbitration agreement in one contract will not be construed to apply to claims that arise out of a related but separate agreement. And even if the two agreements concern the same general subject matter, in Salzitz, we had a letter of understanding that had no arbitration agreement. We had an addendum to that letter of understanding executed the very same day, and the addendum did have an arbitration provision, and it had extremely broad language. It said, in the event there are any claims or disputes between parties hereto, such claims or disputes shall be submitted by the parties for resolution and binding arbitration within Lake County, Illinois. And the Illinois Supreme Court held that claims that arose out of the letters of understanding were not subject to the arbitration clause in the addendum. And that was despite the extremely broad language. It was despite the fact that the letter of understanding and the addendum both generally concerned the party's business relationship and the fact that the addendum was executed the same day and in all probability at the same time as the letter of understanding. And we relied on Salzitz here and below. It undermines any claim that the arbitration agreements arbitration clause applies to controversies that arise out of and relate to the separation agreement. And Kate's attempt to distinguish Salzitz is just a single inaccurate sentence. It says that Salzitz is distinguishable because Kate's and Mahoney incorporated the operating agreements terms into the separation agreement, but they did not do that. Again, as I mentioned earlier, and the parties know how to say we are incorporating here in the arbitration agreement or the operating agreement as a whole, and they didn't either. Kate's arguments are largely that we should essentially, we don't take into account the arbitrator's duties in assessing the scope of the arbitration clause. And I don't think that makes sense when we have to, otherwise we're going to send claims to the arbitrator that the arbitrator just can't possibly handle. And that would be unreasonable. It would violate multiple principles of contract interpretation. And Kate's also argues for the first time in his reply brief on appeal that the solely in accordance language merely prevents an arbitrator from changing by the operating agreements terms. Now, no doubt it does that. No doubt an arbitrator can't foist some new agreement upon the parties, but the plain meaning of the language also prevents the arbitrator from determining a controversy in accordance with the terms of agreements other than the operating agreement itself. And so it prevents the arbitrator from making determinations in accordance with the separation agreement. And Kate's only case on this issue is a readily distinguishable unpublished federal court decision from 1989, the Davis case. And Davis found that similar solely in accordance with language did not prevent an arbitrator from granting rescission of a franchise agreement. And the franchise agreement contained the arbitration clause of the issue. So Davis involved a claim that arose from and related exclusively to the agreement containing the arbitration provision. Here, we don't have that. We have claims that arise from and relate to an agreement other than the agreement containing the arbitration provision. So Davis simply does not provide any support to Kate's position here. So standing alone, the operating agreements arbitration provision certainly doesn't apply to Mahoney's claims. And nothing in the separation agreement expands the scope of the arbitration clause or changes that analysis or that outcome. Again, Kate's and Mahoney are both attorneys, and there were multiple ways they could have changed the outcome. And they could have chosen to modify the arbitration clause in the separation agreement, could have chosen to expand it. And Kate's concedes that they did not do so. Kate's and Mahoney could have included an arbitration provision in the separation agreement. And clearly, they knew how to draft arbitration provisions. They had done it in the operating agreement. They didn't do that either. And the separation agreement could have but does not incorporate the operating agreements arbitration clause by reference. And the circuit court treated these agreements as one. And it was error to do that. It did essentially, for the parties, what they chose not to do for themselves. They chose not to modify the arbitration provision. The circuit court did that. And it did so in part because the separation agreement severability clause references the arbitration provision in the separation agreement. It also references the possibility of a court or an arbitrator making determinations about the separation agreements validity. I think it's noteworthy that that provision references a court making determinations. I think it's pretty clear that the parties weren't precluding the possibility of a court making determinations on the separation agreement. And the mere fact that the parties referenced an arbitrator is a long, long way from the parties agreeing to bind themselves to arbitrate claims arising out of the separation agreement. It's really just acknowledging the possibility that the parties could down the road agree. And when a dispute arises, we're going to send this dispute to arbitration. Finally, the circuit court relied on a case from 1993 called Nagel. And Nagel stated that an arbitration clause that provides that all arising out of or relating to an agreement shall be settled in arbitration also covers a dispute arising under a subsequent agreement between the same parties as long as the original agreement and the subsequent one concern the same subject matter. Nagel is readily distinguishable. First, the arbitration clause in Nagel lacks the limiting solely in accordance with language contained in the arbitration clause here. Second, Nagel predates the Illinois Supreme Court's decision in Selzitz. And Selzitz, again, makes it clear that we're not going to extend an arbitration agreement by construction or implication. And third, you know, the Nagel court referred the case to arbitration or to the arbitrator so the arbitrator could determine whether the arbitration clause was incorporated by reference in the agreement that lacked an arbitration clause. Here, it's clear that the separation agreement does not incorporate by reference the operating agreement. And nobody is requesting that the arbitrator make any arbitrability determinations as to whether Mahoney's claims are arbitrable. So it was an error for the circuit court to rely on Nagel. So my last big point, and I'm sure I'm running fairly short on time here, is that none of Mahoney's claims can be determined solely in accordance with the terms of the operating agreement and Illinois law governing LLCs. And Cates hasn't explained how they could be, how the arbitrator could possibly determine these claims and comply with the limits on the arbitrator's authority that are set forth in the operating agreement's arbitration provision. So for those reasons, the circuit court should, this court should reverse the circuit court to the extent it compelled arbitration of Mahoney's claims and should affirm the circuit court to the extent it denied Cates' motion to compel arbitration. And I will, you know, my opportunity on rebuttal. Thank you. Thank you, counsel. Ms. Kusmer, your argument in favor of the appellate cross, appellate, pardon me, cross appellant. May it please the court. The lower court erred in failing to send each of plaintiff's claims to arbitration where it was mandatory under 710 ILCS 5 slash 2. The statute requires a court to send claims to arbitration where there's a valid arbitration agreement and a party's refusal to do so. And here the parties are bound to arbitrate issues they agreed to arbitrate. First at the outset of their practice together, they entered into the operating agreement. In article 11 of that agreement, they agreed to arbitrate quote, any controversy arising out of or relating to the operating agreement. Further, they agreed the operating agreement would quote, continue until dissolved under its terms or otherwise amended. So there was no doubt that these parties were going to arbitrate issues. Counsel, if the initial agreement was so comprehensive, why was the separation agreement needed at all? Well, parties determined to craft the separation agreement. It changed certain terms of the operating agreement, but it didn't change any of the terms with regard to the arbitration agreement. To answer the court's question on who decided on the separation agreement, I know that Mahoney was the first one to submit a draft of the separation agreement between the parties. It seems to me the primary issue in this case is whether, as you argue, we should view the separation agreement as essentially incorporating the arbitration provisions from the initial agreement. Correct. At the time the separation agreement was drafted, there's no question but that Cates knew about the settlements in Blue Cross and the Masia cases. Isn't that correct? Well, I don't think what Cates knew or didn't know about the Masia cases are applicable to the arbitration clause. Also, it would be a lot easier if when I ask you a question, you'd respond to the question I asked. I thought I was, sir. Sorry. No, no. I think that calls for a yes or no answer. I don't think it applies here. No, sir. Say again. I do not think it applies here. No. You do not think it was what? I couldn't hear you. Applies here. Okay. Well, that wasn't my question. My question was, at the time the separation agreement was drafted, is there any question but that Cates knew about the settlements regarding the Blue Cross and the Masia cases? Yeah. I think that the evidence will show that not only was Cates aware of what was going on in those cases, but also Mahoney. Both parties were aware. See, that's not, again, my question. A yes would suffice, counsel. So, Cates knew. Cates was aware of what was going on in those cases. Yes. Mahoney claims he didn't know. Is that correct? Right. That's a claim. Now, it seems to me from Cates' point of view, we're talking about millions of dollars here, that weren't part of this arrangement, and it's entirely foreseeable that a litigation by an unhappy former partner might ensue. Isn't that the case? I don't think so. Based on what Cates knew at the time, no. Okay. So, Cates had no reason to think that Mahoney would be unhappy with the arrangement concerning the Blue Cross and the Masia cases settlement. Is that your position? No, your honor. Okay. Well, we're also dealing with some very sophisticated people here, and it occurs to me if it was in fact the case that your client thought it was important that separation agreement should incorporate all of the provisions, particularly the arbitration provision of the initial agreement, the language could have been put in there to do that. That would be one way to do it, yes. Okay. So, this court wouldn't be left with the issue about an inference to have to be drawn. Wouldn't that be right? No, I don't think that an inference is needed because it was addressed another way in the separation agreement. Well, as Mr. Horscroft put it, there's no language in the separation agreement that says, by the way, the arbitration provisions of the original agreement apply here. Isn't that correct? That's correct, but it didn't say that. Now, sophisticated drafters could have put that in, couldn't they? They could have. So, this court wouldn't be left with the issue of inferring it. No, I don't think it needs to infer it, your honor. So, this court wouldn't be left with the issue of having to infer it, but is that right? No, it does not need to infer it based on the other language of the separation agreement. Go ahead. Okay. So, as far as the... Counsel, if I may follow up on that question because the trial court really focused on the reference to the arbitrator in the severability provision, but there was also a reference to the court. And so, the mere fact that there's a reference to an arbitration or arbitrator, I guess that seems to me that it could still be construed that a possibility that the parties might in the future agree and that would be independent of their obligations. There's also the reference to the court. And so, the trial court is just picking out one of those two phrases, a determination by a court or an arbitrator. And so, how do you reconcile the trial court's decision to ignore the reference to court, focus merely on arbitration and suggest that that is the equivalent of an express intention to arbitrate all the claims with regards to both contracts? Yes. I noticed that the court did that as well. I would say that that is one reference to arbitration in the separation agreement. But as I was saying, I think that the key in the separation agreement is the language that it did not modify or amend any article or section of the operating agreement unless otherwise indicated. So, I think as far as the arbitration agreement in the operating clause, it is incorporated by virtue of that express language the parties agree to put in the that language is the equivalent of incorporating by reference? Yes. Counsel, do you concede that these are two distinct contracts? I do. Yes. With one incorporating the other. And I guess, how do you reconcile that with section 19 though with regards to the when it talks about conflicts between the agreement and the operating agreement and it specifically, you know, suggests those are two separate and distinct references because merely affirming those terms and suggesting you're not modifying them from the subsequent contract, I don't think is one and the same as incorporating by reference. Right. But there's no conflict between the operating agreement's arbitration clause and the separation agreement at issue here either. So, there is no other statement. Would there be a potential conflict though as to how they resolve the fees issue when they're talking about resolution of these cases because there was at least an email exchange back in June where Mr. Cates suggested he did not agree with what would be included in the term resolve with regards to the case? So, could there be a potential finding where there is one formula for determining a fee under the operating agreement and a different agreement with regards to how that was interpreted with the separation agreement? Yeah. And I think that those changes in the fees are one of the expressed changes that made the separation agreement necessary. So, some terms the parties did agree to change. Those changes from the separation agreement to the operating agreement form the basis of some of plaintiff's claims on damages, whereas he would receive one thing under the separation agreement versus the operating agreement. So, those were expressed changes that were made within the separation. There was no such change with regard to the arbitration agreement. And so, in arbitration, the arbiter would need to look to both agreements. Correct. Thank you. It's clear that plaintiff's claims arise out of or relate to the operating agreement. The operating agreement created the firm and without it Mahoney and Cates wouldn't have been members. If they weren't members of the firm, then there could be no allegations of fiduciary duties, as in counts one through three. Likewise, without the operating agreement, there'd be no duty to disclose anything to Mahoney, as in count four, and no breach of the separation agreement, as in count five, as it wouldn't have existed without the operating agreement itself. Also, the counts the trial court determined were non-arbitrable, again, went back to damages. That's the common sense part. But the court can simply look to plaintiff's complaint to see that each claim arises out of or relates to the operating agreement. Some examples are plaintiff's citation to Article III of the operating agreement, which established a member profit allocation, plaintiff's cites to Article X of the operating agreement, which established member duties while in dissolution, and plaintiff then incorporated the operating agreement's terms into every single count in his complaint. Interesting to note, despite all this, plaintiff then didn't even attach the operating agreement to the complaint. But if that weren't enough, the separation agreement here specifically incorporates it. Logically, following the firm's dissolution, the parties put together a separation agreement. This agreement modified some terms of the operating agreement, but the parties didn't modify anything with regard to the arbitration agreement. And making additional reference to the arbitration clause was unnecessary because the separation agreement stated that it didn't modify or amend any article or section of the operating agreement other than where specifically indicated. And unless indicated otherwise, the operating agreement shall govern and control the party's rights and obligations with respect to dissolution of the firm. As to scope, it's clear that each of plaintiff's claims falls within the scope of the arbitration clause. When determining arbitrability, the focus is on the factual allegations and nexus. The parties incorporated a generic arbitration clause, meaning they use the terms arising out of and relating to. So under the Clark, Costacos, and Liu cases, because of the broad clause they chose, any dispute even arguably arising from it must be arbitrated. Instead, the trial court focused on the agreement being silent on the issue of fraud. But the Silver Cross Hospital case the trial court cited in support of this didn't speak to that issue, where it involved a contract that spoke to one party's duties but not the one at issue. Similarly, the Harrison Blades case cited by the trial court was based on similar circumstances. And that's not the case here where the operating agreement directly formed the basis of each of plaintiff's claims. I want to touch on plaintiff's argument about this solely in accordance with language in the arbitration clause. The language is included with regard to the duties of an arbitrator, not the scope of the arbitration provision itself. And as to scope, the arbitration clause says any controversy arising out of or relating to this agreement shall be submitted to arbitration and not any court or other adjudicating body. Then as to the duties of the arbitrator, it states the controversy shall be determined by the solely in accordance with the terms of this agreement and Illinois law. We said in the brief and reiterate now that plaintiffs are attempting to rearrange this language to apply to the scope of the arbitration itself to be something like only a controversy that can be determined solely in accordance with the terms of the operating agreement shall be submitted to arbitration. And that's just not the plain language of the agreement. Additionally, this solely in accordance with language is not exclusionary the way plaintiff argues. Plaintiff mentioned the Davis v. Rentrack case on which this court can use the same reasoning and logic. It's the only case cited by any party which directly looks at the solely in accordance with language that's at issue here. And it says that this is standard fair language, which only prevents an arbitrator from imposing terms different from those stated. And in this case, it's further supported by the arbitration clauses next statement that the arbitrator is to strictly enforce the plain language of this agreement. So concluding, because all claims in plaintiff's complaint are subject to the exclusive remedy of arbitration as contained in the operating agreement and incorporated by the separation agreement. I asked the court to reverse the trial court's January 8, 2024 order denying defendants motion to dismiss and compel arbitration and remain the case to compel the claims to arbitration as clearly contemplated by the parties. Thank you. Counsel, I do have one follow up question because I want to make sure I understood an earlier part of your argument. I believe you suggested there would be no fiduciary duties without the operating agreement. Is that correct? Yes. So the LLC though, once the certificate of organization is filed, it comes into existence, correct? And if there's if the parties had never created an operating agreement, would there be any implied terms or duties set forth by statute? Perhaps, but because we have those, those enumerated here and listed in plaintiff's complaint, we know what the duties were that plaintiffs is citing to here because they listed in the complaint that's pulled out of article 10 of the operating agreement. Okay, thank you. Okay, yeah, thank you, your honors. So I think we've heard counsel for Mr. Kate's, you know, acknowledge here that these are two distinct agreements, the separation agreement, the operating agreement are distinct. We've also heard counsel for Mr. Kate's acknowledge that whoever makes the determinations in this case has to look at both agreements. We can't just look at the operating agreement. We've heard counsel argue that the duty of the arbitrator doesn't bear on the scope of the arbitration agreement, but it has to. Illinois law tells us we have to look at the contract as a whole. We can't just read the scope provision, the first sentence of the arbitration clause in isolation. Otherwise we're going to have completely absurd results. We're going to have scenarios where the arbitrator simply can't handle the claims. And we've heard counsel argue that this is a generic clause and that the allegations relate to the operating agreement. Well, you know, obviously the operating agreement is relevant in this case. We're not taking the position that it's not. But that doesn't mean that the claims are subject to the arbitration clause, that the fact that there's some relevance, it's just not enough by the plain language of the operating agreement. As far as the cases that involve generic clauses, none of those have, as I think counsel acknowledged, none of those have the solely in accordance with language that we're dealing with in this case. And for that reason, they're very easy to distinguish. And I did want to address a question that was asked about whether there'd be any fiduciary duties without the limited liability company being formed. I mean, I think even if you don't have, if you don't form an LLC, you've probably got a partnership. And if you have a partnership, you probably have fiduciary duties of some sort so that in that universe, you could potentially still have obligations. And I think the statute, even in the absence of the operating agreement, is going to imply fiduciary duties on certainly the managing member, on Mr. Cates in this situation. I do want to, and again, counsel has tried to argue for Mr. Cates, has tried to argue that there was an incorporation by reference, but the provisions, and I think that the counsel's relying on, they just show that these are two separate agreements. If they were not distinct agreements, if the one incorporated the other, they wouldn't be distinct. You can't say both that these agreements are distinct and that the one incorporates the other. Those two things just, you can't square those two, those two statements. Finally, I did want to touch very briefly on the issue of a controversy here. Again, we've argued that there's, the plain language of the clause says that there has to be a controversy before anything gets sent to arbitration. And Cates hasn't, through any kind of competent evidence, disputed any of the claims that Mahoney has made in his complaint. And a controversy has got to be a disputed claim. And there's a lot of ways Cates could have done it, and he could have done it without waiving any claims. He could have filed an answer and at the same time filed a, as an affirmative defense, the arbitration agreement. He could have filed his motion to compel arbitration and included an affidavit that says, here's what I dispute. None of that's asking the court to resolve the claims, to determine the claims. It's just apprising the circuit court of here's what the controversy is. And that facilitates obviously the circuit court's determination of whoever claims are in fact arbitrable or are not under the clause. The end of the day in this case, the arbitrator could not determine any of Mahoney's claims solely in accordance with the terms of the operating agreement and Illinois law governing limited liability companies. And for that reason, Mahoney asked the circuit court, this court, affirmed the circuit court to the extent it denied Cates a motion to compel arbitration and affirm the circuit court to the extent denied that motion and refused to compel arbitration. And I thank you for your time. Thank you, counsel. Okay, seeing no questions. To address the argument regarding the existence of a controversy. I wanted to point out that the lawsuit itself created the dispute. The defendants filed a pleading against it, the motion to dismiss and compel to arbitration. They filed an affidavit along with that motion. It's unnecessary under Sturgill that says that a trial court's inquiry is limited to gateway matters, like whether there's a valid arbitration agreement and whether the issues fall under the scope. So following Sturgill, the trial court doesn't rule on the merits. And we contend, believe, evidence will show the two cases at issue were not settled. We are looking forward to presenting that evidence. The firm files were always available to plaintiff Mahoney. So the case is going to show that, you know, what what Mahoney claims is not what really happened in the case. But that doesn't that doesn't apply to the court's issue of arbitration. Again, we were protecting against waiver. Plaintiff has cited no case law that says that it was necessary to file an answer to the complaint or dispute the issues of the complaint along with the motion to dismiss. And we filed a proper pleading. So concluding, because all claims are subject to the exclusive remedy of arbitration, as stated before, we ask that the court remand the case to compel the claims to arbitration as clearly contemplated by the parties. Thank you. They're all thank you, counsel. Thank you. Both the matter will be taken under advisement. And at this time, we stand in recess.